3-18-0430 Kankakee Nursery v. The Workers' Compensation Commission Good morning, your honors. Counsel, good afternoon. May it please the court, my name is Jason Galecki. I'm here on behalf of Kankakee Nursery representing... Counsel, are you here on behalf of Kankakee Nursery or are you here on behalf of an insurance company? I would say both. There's one employer here. What does Kankakee Nursery care? They've been found liable. They're going to have to pay. Were either of these insurance companies... Did they intervene in this case anyway? No. And how did Kankakee Nursing sue Kankakee Nursing? I'm not sure they did. Well, it's a caption of the case. You've got it on the brief. The brief says Kankakee Nursery v. Raymond Cerati and Kankakee Nursing. How bad is it? There was two applications that were just on the plain. Both were named Kankakee Nursery and both were tried at the same time. Exactly right, but Kankakee Nursing didn't sue Kankakee Nursing. No. No, but the Fisher v. Cerati sued Kankakee Nursing and the judgment was entered against Kankakee Nursing. Who's Kankakee Nursing? Kankakee Nursery. Nursery. Nursery. So you people are two insurance companies fighting against each other. This doesn't have anything to do with Kankakee Nursery. They're going to have to pay, period, and they're going to collect on one of these policies. Correct. Yes, and if you're not a party... What I'm trying to get at here is you people do not represent Kankakee Nursery. You represent two insurance companies fighting. Correct. And does the act provide that the insurance companies can come in and fight amongst themselves as to who has to pay? Well, I believe I quoted the Upchurch case, which was the appellate court case that indicated that there are divergent interests, even though it could be one employer with two separate insurance companies. And in Zion Benton, also, there was one employer with two separate insurance companies. So I think this court has ruled that that is a possibility. Okay. Go ahead. With that said, Your Honor, the law is quite clear that every natural consequence that flows from a work accident is compensable unless it's caused by an intervening accident that breaks that causal chain of connection. Looking at the commission decision, they never performed this analysis. There is no indication whatsoever that this analysis was ever performed. And I find that curious because two of the three commissioners on this decision were also on par electric, and they did perform the analysis in par electric. So it wasn't something that they didn't know how to do. They specifically avoided it. For what reason, I don't know. But they did not perform that analysis. Well, hang on a second. Sure. The commission decided that the second accident aggravated the first, and only the second is causally related to the claimant's current condition in Belgium. Wasn't that their decision? No, I don't believe it was. I believe it was the second condition aggravated it, but they found Dr. Goldberg's opinion persuasive that the second accident caused it. I don't believe, if you want to say that that automatically means that they found that the second accident caused it, I guess you could say that, but I don't believe that's exactly what it said. Well, Goldberg opined the surgery is due to the accident of April 28, 2014. Correct. He also opined that the first accident was a causative factor in the surgery as well. So which one is it? He found Dr. Goldberg credible, found it persuasive. He said both, and under the intervening accident analysis, which should have been performed in this situation, if it's a causative factor, then it does not break the causal chain of connection. This court in Vogel specifically said that. If it is a causative factor, it's against the manifest weight of the evidence. That's what I'm arguing. What they said is they said it aggravated it. We know that aggravation is not the standard of proof in this situation. It has to break the causal chain of connection. TSCA indicated that. A mere accident of mendota, a mere aggravation does not break the causal chain of connection, whether it's work-related or not work-related. What did the claimants say? On the day after the second accident, when seeking medical treatment, did the claimant himself say that he was doing fine, quote-unquote, until the second accident occurred? Okay. So doesn't that bear on the issue at all? I believe it has some bearings, but if you look at the Vogel case, he said the exact same thing. I was doing fine until the second car accident. Yes. So does that automatically mean because he was doing fine? I think you have to look at the actual evidence, not just his fact that he was doing fine. Well, that's what the commission did. They used Goldberg's opinion and the admissions of the claimant to arrive at their conclusion. Right. That his condition of L.D. was related to the second accident. Correct. So what's wrong with that? They still haven't performed the analysis of how to break the causal chain of connection, and I also think the facts don't support their findings. So do we review the ultimate decision of the commission, or do we decide the case based on the reasoning under the law? What would you say to that question? I would say you have to review the commission decision, but there has to be evidence to support it, and if there's an opposite conclusion, then it would be deemed against the manifest way to get it. Well, you're exactly right. Evidence. Because the analysis, they could have the wrong analysis, you realize. Correct. And we would still affirm them if we thought the result was good. Correct. I agree with that. Okay, so you clarify that. That's fine. But let's look at the situation here. We have a gentleman who was perfectly fine before the first accident. There's no dispute on everybody. He sustains the accident. He has a large herniated disc. The first time he goes and sees Dr. Harvey, recommends surgery. If you want surgery, return on a herniated basis. The gentleman wanted surgery, indicated he did. But then he decides, you know what? I'm 28 years old. I got kids. I'm going to try to avoid this. So he decided not to have surgery. He decided to try to put it off. Okay. Right? He is examined eight times before September of 2013, when Dr. Harvey put him at maximum improvement. Six out of those eight times, surgery was discussed. He went and saw Dr. Gailey, which is the insurance company, Berkeley, that's expert. And Dr. Gailey said, you can't put this off. This disc is too large. You're going to need surgery. He recommended it immediately. So we had the only two doctors that treated him before the second accident took place said, you need surgery. Except the claimant didn't know it? He tells everybody that he was okay until the second accident? He didn't say he was okay. He said his pain was well controlled. It was tolerable. He said he was doing fine. So why would he say he was doing fine in the face of all of his doctors telling him he's not doing fine? I don't know. Maybe because he was doing fine. Okay. But I would disagree because he also said that the pain after the first accident was not as bad as the first. I mean, Justice Hudson, in your oral argument in Par-Electric, not in Par-Electric, in Northwest, which, I'm sorry, what's that case? My oral argument? What? It was like giving an oral argument. No, but you questioned in the oral arguments, and you asked what was the objective evidence following after the second accident compared to the first. Yes. You specifically asked that. There is no objective evidence. In this case, that is different afterwards than there was first. Yes. You're right. In that case was the claimant. Your claimant, I see this as an issue. Maybe I'm totally missing something. Okay. Maybe I'm missing your... If the claimant says he's fine, that has some meaning to the commission, doesn't it? I think it does. But I also, in the oral argument, you questioned the difference between subjective symptoms and objective findings. I'm glad you're listening to my questions. I do. I do. But there is a difference here. We have the condition of the herniated disc is the same before and after. The surgery recommendation is the same before and after. The symptoms are the same before and after. There is no difference. This is a mere aggravation. There is no objective evidence to show a difference. He went back to work full-duty after the first accident. He went back to full-duty after the first accident. Another thing that I would say, Your Honor, is there's no but-for test here, which is quoted in International Harvester and all the other cases. What is the surgery that was provided going to fix the herniated disc? What caused the herniated disc? The first accident. But for the herniated disc, there is no need for surgery. Not one physician has said that the second accident is the sole cause for this need for surgery. What did Goldberg say? Goldberg said there was no new pathology, it was aggravated, and he also said the first accident was a causative factor. He didn't say the surgery is due to the accident of April 28, 2014. That wasn't what he said. That's not a quote? Exactly. But I can also quote you on page C-158. The first accident caused the herniation was a contributing factor in the need for surgery. And according to Vogel, if it's a causative factor, it doesn't break the causal chain of connection. Mr. Meskeroski. I'm sorry? I'm sorry. Goldberg's finding was that the surgery was due to the 14th accident, despite having indicated that it was aggravated by the 12th accident. Goldberg opined that it was due to the increase in symptomology in the complaints of pain, but he indicated there was no new pathology. He stated that the petitioner, when he was released to full duty, was not at 100%. He also stated the first accident caused the initial herniation, and that's the reason he's having surgery. So we could, I mean, I, myself, counsel, we can cherry pick the record and say, well, on cross-examination, he said this, and on recross, he said this. But if you look at it, if the first accident is a causative factor, which Dr. Goldberg said, which Dr. Harvey said, which Dr. Daly said, it's all on everybody. If the first accident is a causative factor, it does not break the causal chain of connection. Okay, but you had something, someone had Goldberg saying, contributing? It was contributing, yes. The second accident. The first accident and the second, yes. Now, you say there was a temporary aggravation. There's a difference. Dr. Goldberg never used the word temporary. He said there was an aggravation that caused the need for surgery. From the aggravation stemming from the second accident. Stemming from the first accident. The second accident aggravated the first, causing the need for surgery. In my understanding, and of course, I'm sure you have a better mastery of the record. My understanding was that Goldberg found that the need for surgery was only due to the 14 accident, although there was acknowledgement of aggravation. But for the 14, there would not have been surgery. I understand your Goldberg argument, but that's the way I understand Goldberg's testimony. Yeah, but as I just quoted to you, Your Honor, on page C-158, he testifies. The first accident caused the radiation and was a contributing factor. So like I said, if we go through the records, yes, the commission pulled out and said it was an aggravation. Households pulled out and said, he said that was the reason. Go a couple pages further, he said the first one was also a reason. I mean, there is, one of the things that I looked at is, there is no difference. I mean, and I don't want to have to read from the record, but I will just briefly to make my point. This is, and as we talked about, he said he's doing fine, and we have to take that into consideration. This is the notes from Dr. Harvey on December 28, 2012, which is almost a year, over a year before. He reports intermittent, sharp, low back pain that radiates posterior down both thighs to the knees. Present pain, 5 out of 10, worst, 9 out of 10. Aggravating factors, walking, sitting, has to use a cart to help him walk. Over-the-counter pain medication helps. Diagnosis, herniated disc. Diagnosis, recommendation for surgery. That's the very first visit. Here is the note after the second accident, the only time he saw Dr. Harvey. Continues with intermittent, dull ache pain, lower back, right buttock. Denies pain today, worst pain, 7 out of 10. Aggravating factors, standing or walking for long periods. TENS unit helps. Denies weakness publicly. I would say these are identical before and after. If anything, the one on 7, 15, 14 doesn't talk about numbness and tingling, and the pain complaints are less. I thought you just quoted that after the first accident he had a pain threshold of 9 of 10. Did you just say that? Yes. Okay. Again, you understand I'm perplexed. Why would he then say after the second accident he was doing fine until then if he's got a 9 out of a 10 pain threshold? Does that make any sense? No. I don't know. I'm not him. I can't tell you. Yeah, but this is your claimant. He should know better than anybody, should he not, what his pain level is? Well, Your Honor, this isn't my claimant. But I'm just saying. Okay. Right. Yes, he should know better, but, I mean, I can't tell you why. I mean, I can't tell you why he testifies and the records show something different. I have to go by the records. I mean, he also said that before the second accident he had pain at home. He had pain with sitting. He had sharp pain, dull pain. He had to use his TENS unit. This is all before the accident happened. So to say that he was 100% his condition had resolved, as the case law more or less says, and then this mere act of bending over and standing up broke the causal chain of connection, I think is a stretch. I don't think it's supported by the evidence whatsoever. Before your time, sir. Sure, Your Honor. Were you ever made a party, your insurance company ever made a party to this action before the commission? The insurance company's specific party? Yeah. I don't believe so, no. Well, 4G provides for it. If the employer doesn't pay the benefits, the insurance company can be made a party. And the order for compensation may be awarded jointly as against the employer and the insurance carrier. Had you entered the hearing before the commission as the insurance company, it occurs to me if an award was entered against you, you would have a right to appeal it. But you're here representing an insurance company that was never a party to these proceedings before the commission, and I question what right you have to appeal it. I don't believe it. I mean, technically, Your Honor, I don't believe I'm representing an insurance company. I'm representing Kankakee Nursery. Kankakee Nursery has to pay this award no matter which insurance company is responsible for it. And there's no disputing that. Okay. No one is turning around and saying Kankakee Nursery is not liable to Mr. Zarate. Correct. You haven't made that argument. I have not. Kankakee has to pay it. So you don't represent Kankakee. You represent your insurance company. And, by the way, Fordsey specifically provides that the insurance companies can be made parties in this action if the employer doesn't pay the compensation. Now, in your case, it would occur to me that when the commission issues its decision ordering Kankakee Nursing to pay the award, Kankakee Nursing isn't going to pay. And then the insurance companies are going to be brought in, and an award is going to be entered against the insurance company. And at that particular point in time, you can appeal it because you'll be a party. And I don't understand how you can appeal this today. And to suggest that you represent Kankakee Nursing is just, I mean, that's disingenuous. Kankakee Nursing has got to pay no matter which insurance company is responsible. Anything else, Larry? No. If you don't believe so, you'll have time to reply. Thank you. Johnson, you may respond. Please, the commission. Tom Nagarowski. This is a question of causation intervening in that case. Mr. Nagarowski, unfortunately, this is not the commission. You said, please, the commission. I'm sorry, Your Honor. And second of all, you represent an insurance company too, don't you? I do, Your Honor. And what right do you have to be here? We appeal the decision the commission made upon you. Does a person who is not a party to a proceeding have a right to appeal it? That's the question I'm asking. None of you people want to exercise 4G. None of you people want to intervene in these actions when you have a dispute between two insurance companies and you just take a shortcut and you appeal the decision when you were never a party. I don't understand how you can do that. Technically, we're representing the corporation through the period. The corporation has to pay no matter which insurance company is responsible. You're not representing the corporation. You're not arguing that the corporation wasn't liable to Mr. Zarate, are you? No. So my question is, where is the jurisdiction? What right do you have to appeal? Jurisdiction was never raised at the commission. No, we have to raise it here. I did raise jurisdiction at the circuit court level because the only decision that was appealed was the second decision and the first decision was never appealed and the circuit court judge ruled against that decision. But my question is, can a non-party to a commission proceeding appeal that decision? I would say yes because the carrier is representing the corporation for that period of time, so they had the right to appeal it. But it's the carrier's interest that they're appealing. It's not the client's. But the carrier has to defend under the policy to the best it can the corporation. And by the way, when you have these disputes with two carriers and two accidents, why don't the carriers do what they should do and intervene in the action? Because 4G will suggest it. The employer is not going to pay this out of his own pocket. So sooner or later when a decision is handed down against that employer, a carrier is going to have to be brought in under 4G. And so you just intervene in the action and then get standing to bring these appeals. I understand it's your pocket it's going to come out of. It's his pocket. It's one of the two pockets. But to suggest that you guys represent the corporation is just not true. Okay. Go ahead. With respect to the decision, the issue of causation and the question of effect were the commission to address including intervening in the accident. Hassell references the case law. I think he's doing too broad or a misinterpretation of the case law. He suggests that there needs to be an analysis done. The court in PARA said we weren't doing any analysis of national freight. We were just following the analysis that the commission put forward and made our ruling and found the decision not to be against the manifest way to the evidence. Also, with respect to the cases of Bogo Tesco, the key distinction in those cases was that the employee had undergone surgery, was still convalescing from the surgery, and had never reached max medical improvement. In this case, there's no indication that he would have ever desired to undergo the surgery but for this second occurrence. Now, if we look at the testimony, Hassell references an IME from Dr. Gelley. That took place in January of 2013 before the second occurrence ever happened. Furthermore, the employee stated that as of January 29, 2013, he had no radicular pain. He went through work conditioning, completed it May 17, and was released to full duty without restriction. May 21, 2013, on page 246, he tells the doctor, I have no desire to proceed with surgery. The pain is controlled. What did the physical findings of the doctor show? Negative straight leg raising. He then comes back to the doctor again in July. I return to work. I'm doing my full duties. I'm doing well. I'm not having any problems. He sees the doctor last time, September 17, 2013, and here I think is what the key to this causation argument is. I'm doing well. The doctor notes, clinically, he's very well. He's at max medical improvement. He then admits, on page 86 of the record, between May of 2013 and up until April 28, 2014, he's doing the full duties, lifting 75 pounds with no problem, not taking any pain medications, and on page 107, he states the pain went away. He then has this incident on April 28, where he's in an unusual position where he has to crouch down for five to six seconds and experiences intense pain. He then goes to the doctor Part of the medical entry from April 29, 2014. The patient states he did well until yesterday and had no further setbacks of back pain or paresthesia until now. Now he has this new accident. He goes back to the doctor and he tells the doctor on July 15, 2014, on page 276 and 277 of the record, I now have radiating pain. Following that second accident, I am now walking like an old man and the pain is no longer tolerable. I can no longer live with the pain. Now he has a positive straight leg raising at 30 degrees and reduced range of motion. All after the second accident? All after the second accident. On page 107, I was doing fine until the second accident. Page 108, the symptoms never revolved after the second accident. The radiation didn't start until the second accident. The pain got worse after the second accident. In his own testimony on page C139 of the record, the reason you wanted to undergo surgery was to correct the symptoms that haven't resolved after the second accident. Yes. Now the only medical evidence of causation in this file was obtained by counsel. And what did his own doctor, Dr. Goldberg, which the commission relied upon in making this decision, he sent him a report and said he returned to work, there was a gap in treatment, it was not until a new accident on April 28th that he seeks additional treatment. It therefore aggravated the prior disc radiation at L5-S1. In fact, Dr. Goldberg on page C172 says, I saw him after 2014, there appeared to be a new trauma. Dr. Goldberg says on page 181, the reason why he needs surgery is the April 28th, 2014 incident. So the commission decision and reasoning for finding it on the April 28th is not against the manifest way of the evidence. He was at max medical improvement, which distinguishes all those other cases, PARA, the doctor released him to go back to work. He only went back to work for one week at the time of the second and third occurrence. And the doctor stated, although he underwent work conditioning, this could not simulate the actual job duties and had not discharged him from care. Here he was at MMI. That's the big difference. The only medical suggests that it was the April 24th, 2014 incident. And I would respectfully request of this court that the commission decision be affirmed. Thank you, Counselor. Good morning. Good morning. My name is Sandra Loeb and I represent Ramon Zarate and your worker in the case. As I heard another attorney say this morning. What do you care? Huh? What do you care? You're going to collect no matter which one. I do care because I think if the telecourt, first of all, finds jurisdiction to hear this case and finds that the claimant's argument is persuasive, I think it would set a dangerous precedent for claims attorneys. What if I had settled with Mr. Makarowski prior to pursuing the second claim? Would Mr. Kolecki be able to get up here and argue that I precluded from... I don't dispute that there's a problem here. I dispute whether these insurance companies can come in, file appeals ostensibly representing an employer. And we know the employer doesn't care. He's got insurance in either case. The employer doesn't care. So if they don't intervene in this case, what right do they have to come in here and appeal? And I for the life of me can't figure out how Kankakee Nursery can sue Kankakee Nursery. Right. And I'm humbled that I did not bring up that argument in my brief. I wish I was prepared to argue that today. Well, I mean, I just don't know how this happens. Well... I mean, it puts an extra burden on you because when this employer doesn't pay, because neither of the carriers will pay it, then in that particular case, you have to go before the commission, you have to bring the insurance companies in under 4G and get an order against the insurance company. And once you do, the insurance company will have every right in the world to appeal that. But I just don't know how the mechanics of this occur under these circumstances. Go ahead. In the event that you do, as a panel, determine that there was jurisdiction and there was appeal, I just want to stress a couple points. I do not believe that the commission needed to apply the independent intervening cause analysis to the facts of this case because there's evidence in this case that Mr. Zarate's condition had stabilized between these two accidents. There's evidence that Mr. Zarate had reached maximum medical improvement without surgery. He did not need any further medical care at the time of his September 17, 2013, evaluation by Dr. Harvey. There was no indication that he was going to even have to return to that doctor. He testified that he was on pain medications. He testified that he was able to return to full-duty work in May of 2013 and continued to do so through November of 2013 when he had a seasonal layoff and then returned back to his full-duty heavy occupation in March of 2014, all before his second accident. The cases cited by plaintiffs all require a finding that further medical care was necessary between the two accidents in order for the intervening cause analysis to apply at all. That evidence isn't present here. Also, there's no evidence that Mr. Zarate, though he had a clear herniated disc before his second accident, there's no evidence that he actually required surgery before his second accident. Subjective symptoms may be the difference between his condition after the second accident, but those support a finding that he needs surgery, according to Dr. Goldberg's testimony. Lastly, even if the court determines that the commission should have applied to intervening cause analysis, I don't believe it should, but if it does, I do still believe the commission's decision is supported by the evidence in this case. As has been stated, the herniated disc may have been present prior to the second accident, but it did not need surgery, by all accounts, prior to the second accident. Just because a doctor discusses surgery does not mean it requires surgery, and as Justice Hudson said earlier, the injured worker knows best how he does and how he needs surgery, or if he needs surgery at all. I have nothing further to add, unless you have any questions. Thank you, counsel. Counsel, you may reply. Just a few replies, Your Honor. Mr. Makarowski brought something up, and I just wanted to make sure. The record that he was reading for, if I'm not wrong, John, was from the nurse practitioner's visit in Riverside right after the accident. I was actually quoting from Dr. Harvey's visit, so that's why there is a difference. I wasn't misplotting the record. I didn't want to try to pull fast on anything. These are two different records, I think, we were discussing. But as Mr. Makarowski said, and as I talked about before, we can cherry-pick the record, and he clearly stated, which is not in dispute, what the petitioner said on page 39. The reason you wanted to undergo surgery was to correct the symptoms that haven't resolved after the second accident. Yes. No dispute. The next page. This is my follow-up. Within Dr. Harvey, there's an indication that you wanted to undergo surgery because you couldn't live with the pain. Would that be correct? Yes. When you meant you couldn't live with the pain, that meant the pain you were experiencing two years since the first accident. Yes. So right there, one time he's saying, I want to have surgery because I can't live with the pain from the second accident. The next time he's saying, I can't live with the pain because I want it for the last two years. I like the argument about cherry-picking the record, but ultimately you do realize the ultimate test in all these cases is, on the manifest way of the issue question, is there sufficient evidence in the record to support the commission's decision? You can call it cherry-picking. He's going to say I'm pointing out to the sufficiency of the evidence. I agree, but then I would go back to Vogel where the court said, and this court said, if there is a causative factor from the first accident, that it is against the manifest way of the evidence. And here, you have Dr. Goldberg saying the first accident, the herniation, was the causative factor. So what relief do you suggest then? If the commission has found that the accident for which your insurance company is responsible is a cause, and the accident which his insurance company is responsible for is also a cause, then who pays the claim? You have to use the but-for analysis. If the causal connection, if the chain of causal connection is broken, then the second party would pay. I'm arguing that the causal chain of connection was not broken. What if it's divisible? It isn't. That's not the apportionment. It's not the law. I don't know why. Apportionment is not the law, but what if it's divisible? But also I believe in par-electric. If I'm not mistaken, they specifically indicated, Justice Huston wrote that decision, that that's not the law either. You can't divide them. It's either one or the other. That's where I come up with this causative factor argument that's indicated in Volgo, that if the cause of the need for treatment is a result of the first work accident, it is against the manifest way to the evidence to find that the second accident is liable. Did somebody specifically say that it was the cause of the first accident, was the cause of the condition of LB? Did somebody say that? Yes, Dr. Goldberg specifically said on page 158.  He said the first accident caused the herniation. Yes. And he said it was the contributing factor in the need for surgery. Okay. And the commission believed Goldberg, so how did they arrive at the opposite conclusion that you argued for? I don't know. I don't know. Are you cherry-picking the record? Probably. You know, I mean, that's how it goes, as you've indicated. Is there any evidence in the record, medical evidence, that says that the first accident was not a causative factor in the need for surgery? No. There's none. There's none. There's not one doctor that said the first accident did not need surgery. Actually, Dr. Harvey, on two occasions, indicated if the herniated disc did not change inside, he would benefit from surgery. Here, I mean, and with regards to what counsels have argued, he needs surgery. Now, it's been five years since we tried this case. He hasn't had the surgery. So I think the question of need is more of a question of want. He needed the surgery right after it happened. Dr. Harvey said that. He wanted to have it. Then he got scared. So the difference between need and want is... Yes, but I would simply reply by saying Mr. Makarowski took ten minutes with a plethora of evidence showing that your client was lifting all these heavy weights, was doing everything he could do perfectly before, right after the second accident that he did before, and he said he was fine. Right? He said he was fine. He was, I know for a record. No, but he was doing everything he did before the first accident. Okay. He was doing everything he was doing after the second accident. But no complaints of any problems after the first until the second. No, no, no, no. I disagree with you, Your Honor, because the records indicate, and I can go through the record again. This is Mr. Zarate's testimony. Physical therapy never took my pain away. Work conditioning did not take my pain away. I was still having pain despite a return to work. On 9-17-13 when I was placed at MMI, my pain never went away. Are you guys looking at the same records? What? Are you guys looking at the same medical records? This is his testimony. These are what the records say. During seasonal layoff, I had pain. When I returned to work on March 20, 2014, a month before the accident, I was still in pain. And yet he says he's fine. I don't know. Okay. After the second accident, my pain was the same as before. After the second accident, I returned to work full duty. This is a gentleman who after the first accident without restrictions for almost eight months had surgery discussed six times. Well, maybe the answer is the commission can decide which part of the claimant's testimony they believe and which part they don't. It still has to be supported, though, whether they believe it or not. Okay. Can I ask one more question? Absolutely. I asked, we had a discussion earlier. The commission seemed to find that Goldberg found that it was attributable to the 14th accident was a need for the surgery. Despite having said that the commission's finding, despite this doctor having said it was aggravated, the commission found that Goldberg said that it was in response to the 14th injury. Correct. Correct. Okay. And Dr. Goldberg said that because he said the second accident aggravated his preexisting condition. And as I've argued and as the case law indicates, an aggravation does not break the causal chain of connection. But there seems to be a distinction between the testimony or the opinions of Goldberg and the way the commission interpreted those opinions and what they mean. You're – I probably should have let that go. But you're imposing the Goldberg decision where the commission found that Goldberg indicated but for – or the commission found that but for the 14th accident there's going to be no need for surgery. I don't believe that's what it says. I don't believe that's what it says at all. There's no indication of that whatsoever. They indicate that they found it persuasive that Dr. Goldberg testified it was aggravated. And in Vogel, this court also said that the commission in that case found that the condition was aggravated. They found that was not the right analysis. That was not enough to determine that there was a break in the causal chain of connection. Now, if the commission would have came and said, we think the second accident broke the causal chain of connection, I think my argument probably wouldn't be here. Because I don't think I'd have a very strong argument to manifest weight. But the fact that they're saying his condition was aggravated and he was doing well or reasonably well, I think the records show a complete opposite. And I believe the case law shows that there was no change in pathology. Every doctor said that. There was no change in his workability before and after. Every evidence says that. There was no change in surgery. I mean, there's no change in symptoms, as I indicated in the records, and as Mr. Zerati himself testified to. All we have here is a gentleman that was living as best as he could with this pain because he was afraid to have surgery. And after two years, he specifically testified, I can't live with it anymore. Okay, very good. Thank you, Your Honor. Thank you, counsel, all three of you, for your arguments in this matter this morning. It will be taken under advisement. Written disposition shall issue. And the court will stand and recess.